UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COURTNEY SHAGREN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>　　　　　　Defendant. | CASE NO. 17-251-RBL<br><br>**REPORT AND RECOMMENDATION REVERSING AND REMANDING** |

Courtney Shagren appeals the ALJ's decision finding him not disabled. The ALJ found Mr. Shagren's dysthemic disorder, general anxiety disorder, panic disorder without agoraphobia and Asperger's syndrome are severe impairments; these impairments do not meet the requirements of the Listed Impairment; Mr. Shagren has the residual functional capacity ("RFC") to perform work at all exertional levels subject to several non-exertional limitations; and that he is not disabled because he can perform jobs in the national economy. Tr. 28-40. The ALJ's decision is the Commissioner's final decision because the Appeals Council denied review. Tr. 1.

Mr. Shagren contends that by misevaluating the medical evidence, the ALJ erroneously found his mental impairments do not meet the requirements of the Listings, and that he can perform jobs in the national economy. Dkt. 12 at 1. For the reasons below, the Court

recommends **REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**DISCUSSION**

Mr. Shagren contends the ALJ erroneously rejected the opinions of examining doctors Ellen Walker, Ph.D., Kerry Bartlett, Ph.D., and Daniel D. Brinkman, Psy.D. Dkt. 12 at 4. He argues had the ALJ accepted, instead of improperly rejecting, the doctors' opinions the ALJ would have found at step three that Mr. Shagren's mental conditions meet the requirements of a Listed Impairment, and also would have found at step five that he lacked the RFC to perform jobs in the national economy.

The ALJ must give more weight to a treating doctor's opinion than to a non-treating doctor, and more weight to an examining doctor's opinion than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). The ALJ may reject the uncontradicted opinion of a treating or examining doctor's opinion "clear and convincing reasons." *Lester v. Chater*, 81 F.3d at 830-31. Where contradicted, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record to reject a treating or examining doctor's opinion. *Id.*

### *1.    Dr. Walker*

Dr. Walker performed a psychological evaluation and opined Mr. Shagren "has been crippled by his symptoms of anxiety and depression and chronic insomnia serves to exacerbate these symptoms." Tr. 471. The doctor opined Mr. Shagren is "clearly bright and once his mental health conditions are stable he will be a candidate for gainful employment." Dr. Walker estimated Mr. Shagren needs two years of treatment to achieve stability to be employable. *Id.*

The ALJ rejected Dr. Walker's opinions first finding "this evaluation was paid for by the representative." Tr. 37. The ALJ committed legal error. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d at 832. Next, the ALJ rejected Dr. Walker's opinions finding "she did not correlate her opinion to any of her own testing." Tr. 37. This vague and conclusory statement is legally erroneous. The ALJ may not reject a doctor's opinion by asserting it is not supported by objective evidence. Such assertions lack the specificity required to reject a medical opinion. The ALJ must offer more than her own conclusion, she must explain why her interpretation, rather than the doctor's, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). As the ALJ failed to do so, the ALJ erred.

The ALJ also rejected Dr. Walker's opinion stating "there are no clinical notes to explain her conclusions, other than the subjective complaints of the claimant which are of questionable credibility." Tr. 37. The ALJ's reasoning contains two parts. As to the first part, the ALJ errs when she rejects a doctor's opinion by stating there is no objective evidence—clinical notes in this case—because this is an insufficiently vague and conclusory reason. As to the second part, the ALJ may not reject an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports her

ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.2001). Dr. Walker did not question Mr. Shagren's credibility. She observed his affect was anxious, an observation related to her conclusion that Mr. Shagren's anxiety limits his ability to perform gainful work.

The ALJ also discounted Dr. Walker's opinions because it was a one-time evaluation. Tr. 37. This is a legally erroneous reason. Examining doctors generally provide opinions based upon a single examination. The ALJ's rationale would render all examining opinions superfluous, and is also contrary to the requirement that the ALJ consider all relevant evidence, including medical opinions of examining doctors. *See* 20 C.F.R. § 416.945(a) (ALJ must assess medical reports in determining a claimant's capacity to work).

And finally, the ALJ rejected Dr. Walker's opinions as inconsistent with the following daily activities: "interaction with people through the computer, previous church involvement, and educational accomplishments." Tr. 37. Substantial evidence does not support this finding. The fact Mr. Shagren interacts with people via computer does not automatically establish his interaction with people is normal. The record, in fact, shows otherwise. Mr. Shagren's father stated Mr. Shagren "interacts with others on the computer," "daily," but did not indicate with whom Mr. Shagren interacted. Tr. 291. Mr. Shagren clarified his interaction by testifying he used Skype, Facebook, and email to interact with family members. Tr. 58. But other than this limited interaction, there is nothing showing Mr. Shagren has normal interactions with other individuals. In fact, Mr. Shagren's father indicated his son's interactions with others is not normal; that his son "remains in his apartment unless he visits family or shops for groceries." Tr. 292.

The ALJ's reliance on Mr. Shagren's "previous church involvement, and educational accomplishments" is also erroneous because these activities occurred at a time when Mr.

Shagren did not claim he was disabled. Mr. Shagren alleged he became disabled on November 30, 2012. Tr. 27. He completed his AA degree in 2017 four years earlier, Tr. 418, and attended church up to the end of 2012 during the time he lived In Bellingham. Tr. 63. He stopped attending church after he moved from Bellingham to Lynden to live with his parents approximately at the end of 2012. Tr. 52. Mr. Shagren's activities thus do not contradict Dr. Walker's opinions because they all occurred before the date Mr. Shagren became disabled.

In short, because the reasons upon which the ALJ relied to reject Dr. Walker's opinions are either not supported by substantial evidence or legally erroneous, the Court reverses the ALJ's determination.

### *2.    Dr. Bartlett*

The ALJ rejected Dr. Barlett's opinion that Mr. Shagren could not work for three reasons. First, the ALJ found Dr. Bartlett "did not relate any of the testing results" to his opinion Mr. Shagren would likely be overwhelmed in a work environment. Tr. 36. The finding misapprehends the basis of Dr. Bartlett's opinions. Dr. Bartlett administered cognitive tests on Mr. Shagren. But he did not opine Mr. Shagren could not work based on the cognitive test results. Rather he opined Mr. Shagren could not work due to non-cognitive limitations arising from depression and anxiety. Tr. 497.

Second, the ALJ rejected Dr. Bartlett's opinion finding the doctor did not explain how Mr. Shagren's sleep deficits preclude employment. Tr. 36. The ALJ erred because Dr. Bartlett in fact explained that Mr. Shagren's "sleep disruption" "will continue to fuel his depressive ideation and promote excessive absences from work." Tr. 496-97.

And third, the ALJ discounted the doctor's opinion on the grounds that "he did not explain how the claimant was unable to work," and "did not consider the claimant's performance

within a limited work setting such as I have outlined above." Tr. 36. However, as noted above, Dr. Bartlett explained that Mr. Shagren's sleep disturbance fuels his depressive ideation and will promote work absences. Additionally, Dr. Bartlett opined Mr. Shagren is moderately depressed and that his Asperger's Disorder causes him to "experience compromised ability to engage in and appreciate non-verbal aspects of social interaction"; engage in stereotypic behavior; and engage in highly focused behavior to the exclusion of other behavior. Tr. 496. Accordingly, substantial evidence does not support the ALJ's finding that Dr. Bartlett failed to explain why Mr. Shagren "could not work."

As to ALJ's finding that Dr. Bartlett "did not consider the claimant's performance within a limited work setting such as I have outlined above," it is unreasonable for the ALJ to reject the doctor's opinion for failing to "consider" the ALJ's findings. This is because Dr. Bartlett evaluated Mr. Shagren in 2013, nearly two years before the ALJ's 2015 decision. Because it was impossible for Dr. Bartlett to consider a finding that did not exist, the ALJ unreasonably voided Dr. Bartlett's opinions.

### *3.    Dr. Brinkman*

Dr. Brinkman performed three psychological examinations, and also submitted a "representative supplied Mental Health Capacity Assessment." Tr. 38 (referring to Tr. 418, 426, 464, 586). The ALJ rejected the opinions in the three examinations because the mental status exam was within normal limits, and the doctor did not "give an explanation for these limitations outside the subjective allegations of the claimant." Tr, 37. The record does not support this finding. In the mental status exam performed on January 21, 2013, Dr. Brinkman stated under "Mood" that Mr. Shagren "reports his mood as depressed and anxious and that it has been this way for years." Tr. 421. Under "Affect," Dr. Brinkman reported "His affect was restricted and

flat and is congruent with his reported mood and situation." *Id.* This record thus establishes the doctor's mental status exam contains observations the doctor actually made, and which the doctor found congruent with the symptoms reported by Mr. Shagren. In an earlier evaluation, Dr. Brinkman also noted he observed the following symptoms: anxious mood, depressed mood, mental distraction and decreased energy. Tr. 464. Accordingly the record does not support the ALJ's finding that Dr. Brinkman did not explain his opinion outside of the "subjective allegations" of Mr. Shagren.

The ALJ also rejected the opinion on the grounds Dr. Brinkman did not treat Mr. Shagren and performed the exam to assess eligibility for state benefits. As discussed above, the ALJ is required to consider relevant medical evidence, and there is no basis to conclude an examining doctor's opinion—which frequently involves a one-time non-treating exam— is not relevant. Further as noted above, the purpose for which medical report is obtained is not a valid basis to rejecting it.

**CONCLUSION**

Mr. Shagren contends, and the Court agrees, the ALJ erred in rejecting the opinions of Drs. Walker, Bartlett, and Brinkman. The error is harmful because to properly determine Mr. Shagren's ability to perform work, the ALJ must consider the limitations set forth in the relevant medical opinions. See 20 C.F.R. §§ 404.1545(a), 416.945(a). This is something that did not occur because the ALJ rejected each of the doctor's opinions about the extent of Mr. Shagren's limitations. Mr. Shagren suggests the Court reverse and remand for an award of benefits. Dkt. 12 at 1. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Here, the record is not fully developed. The medical

evidence must be reweighed. The ALJ and not the Court must reevaluate the medical evidence and based upon that reevaluation determine whether Mr. Shagren's mental impairments meet the requirements of a Listed Impairment, and if not, whether he retains the RFC to perform gainful work in the national economy. Only in rare circumstances should a case be remanded for benefits, and this is not such a case. *Treichler v. Colvin,* 775 F3d 1090, 1099 (9th Cir. 2014).

Accordingly, the Court recommends **REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate the opinions of Drs. Walker, Bartlett, and Brinkman; develop the record as needed; address whether Mr. Shagren's impairments meet the requirements of the Listings, and if they do not, not reassess as appropriate his RFC and ability to perform work.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **September 7, 2017.** If no objections are filed, the Clerk shall note the matter for **September 8, 2017** as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed **eight** pages. The failure to timely object may affect the right to appeal.

DATED this 24th day of August, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge